Dunkin, Chancellor.
I concur in the decretal order of this Court; I also agree that neither Henry Field, nor John S. Field, can object to the new bond. But, in my opinion, no default had been committed when John S. Field was substituted as surety on the guardianship bond. The balance belonging to the ward properly remained in the hands of the guardian, or must be presumed to have so remained, as no other person had authority to receive it; but I regard the original guardianship bond, and that to which John S. Field was surety, as the same. A new bond was given only because it was desired to relieve the former surety and substitute a new one. For the reasons stated in the decree, I think the indemnity, given to Stoney and Lawrence, enured to the benefit of the substituted surety, John S. Field; and the complainants having received the property thus pledged, in satisfaction of a larger sum than the penalty of John S. Field’s bond, their remedy under that bond is gone.
Johnson, Ch. The questions involved are, in themselves, important and of frequent recurrence, and I have used the occasion to express my own views.
No one will be found to deny to the Court the power to revoke the appointment of a guardian, made by it, on a proper case made; such, for example, as themal-treatment of the ward, or the misuse of his funds, and appoint another or re-appoint the same, and require a new bond with new sureties; nor will it be denied that the Court may compel him to find additional security, when that, originally given, is ascertained to be insufficient, by making it the *390 condition of his continuing in the trust. These are every day, common place matters, that need no illustration.
I think too, it is equally clear, that the Court may, in a proper case, discharge the sureties to a guardianship bond'. We are met here, however, with the dictum of Mr. Justice Colcock, in Shelton, ads. Cureton, 3 M’Cord 412, in relation to the liability of the sureties, to an administration bond, “that there is no power which can discharge a liability already incurred,” which is followed by Mr. Justice O’Neall, in Trimmier vs. Trail, 2 Bailey 246 — now if it is meant, that the Court will not, in its supervision over the estate of an infant, discharge a security without an equivalent, I concur in it entirely. But the Court does, and it is necessary that it should, for the benefit of the wards of the Court, exercise over their estates, all the powers that an individual might, in his own affairs. The journals of the Court are filled with orders, directing the sales of real and personal estates of infants, and the investment of the proceeds in something else and, e converso, the investment of money funds in visible property, and I cannot understand why it is, that in the particular case of a guardianship bond, the Court cannot substitute one surety to the bond, in discharge of another — that is done every day by individuals — the debtor on a money bond, to relieve his surety, mortgages property to secure the payment, and the creditor consents to discharge the surety, or tbe debtor gives a new bond with new sureties, which the creditor accepts in satisfaction of the first. It is not improbable, that the debt would be better secured — at least the creditor has it in his power to stipulate that it shall; and I do not perceive, on what principle the power is denied to the Court, in managing the affairs of infants.
The cases of Trimmier vs. Trail, and Waterman vs. Bigham & Hudson, 2 Hill 513, are relied on, to show, that the order of the Court, directing Henry Field to find new sureties and give a new bond, within a limited time, or that his guardianship should be revoked, and Stoney, the surety to the first bond, should be discharged, would not discharge him, although Field had given the bond within the time limited; but that the new bond with the new *391 surety was merely cumulative security, and rendered them jointly liable; and the reasoning of the Court, tends to that conclusion. Both were actions on administration bonds. In both, the Ordinary, under the authority of the Legislature, had compelled the ad'mr. to give a new bond with new sureties, and made an order, that the sureties to the first bond should be discharged. -The rules deducible from those cases, applicable to this case, are,
1st. That the discharge of the surety to an administration bond, by the order of the Ordinary, and new securities given, will exempt him from liability on account of the subsequent defalcations of his principal, but not from liabilities already incurred. 2d. If the ordinary merely takes a new bond with new sureties, it is cumulative, and the sureties to both the old and new bonds, are equally liable. 3d. That if the administration be revoked and granted anew to the same person, and it appear from the accounts, subsequently made before the Ordinary, that the administrator had sold the whole estate, but had received no part of the proceeds, nor wasted any of the assets, before the revocation of his administration, the surety to the first bond would not be liable. In both cases, the surety to the first bond was held not liable. In Trimmier vs. Trail, because the administrator had sold the whole estate on a credit, which had not expired, and he had received no money. In Waterman vs. Bigham & Hudson, because the parties interested, had discharged the surety to the second bond, who was held to be jointly liable, with the surety to the first, and his discharge discharged both.
Taking them merely as abstract rules, I do no know, that there is much to complain of in any of them, but I thought at the time, and still think, that the reasoning of the Court, was calculated to mislead, although, in the results, I never entertained a doubt, that the judgments were right. My objection is, that it is calculated to establish arbitrary rules for the interpretation of contracts, opposed to the general law governing them, and against the intention of the parties.
I say contracts. An administration bond is nothing but a contract, and so of a guardianship bond — in one case the Ordinary, and in the other, the Court, representing one of *392 the parties; and I have yet to learn, that they are governed by peculiar rules ; or that they may not be varied, or altered, or discharged on a sufficient consideration. I will not say, that the Ordinary would discharge an administration bond, or the Court a guardianship bond, without an adequate security, and yet these are subjects over which these tribunals have jurisdiction, and if they were to pronounce judgment, discharging the security, I know no reason, why it should not be as conclusive as their judgment in any other case, within their cognizance.
If, as I suppose, guardianship bonds are contracts, they must, according to an universal rule, be interpreted according to the intention of the parties. When, therefore, the Court ascertains that the security to a bond is inadequate, and orders the guardian to give additional security, there could be no room to doubt that cumulative security was intended. So, if it is intended to discharge the sureties for any cause, the Court, speaking through its order, says to the guardian “ you must find other security. If you do, your present sureties shall be discharged. If you do not, your guardianship shall be revoked and committed to another.” In such a case, there could be no question about the intention; and if, upon failure to give other security, the guardianship was revoked and granted to another, the surety would be liable to the last cent; and if, upon the guardian’s giving a new bond with other security, the sureties to the first bond are discharged, and their bond be ordered to be delivered up and cancelled — by the same rule, their liability would cease. The new bond being accepted as a substitute for the first, being the consideration for cancelling the first.
But it is said, that where a liability has attached, the Court cannot discharge it. Look at the cases of Trimmier vs. Trail, and Waterman vs. Bigham & Hudson. Look indeed at every case that has or may, by any possibility, arise. No liability can attach until the administrator, or guardian, obtains possession of property or funds, and when it once attaches, it never can be discharged, but by a final accounting and paying the last cent. The authority to relieve or discharge sureties, would be mockery, unless the assent, to substitute others as a condition, operated as an *393 entire discharge of all liabilities, present, past and to come.
We are told, also, that an order discharging the sureties to the first bond, cannot operate without an accounting and ascertaining what sum is in the hands of the guardian at the time the new bond is given ; and I agree that it would be very proper, but I cannot admit that it is indispensable. It could only operate to inform the new sureties, as to the probable extent of their liability; but if they undertake, without this information, they are answerable for all the consequences. In the Treasurer vs. Lang, 2 Bailey, 430, Evans had been elected Clerk of the Court for four years, and gave the usual bond, with sureties, — during this term, he received large sums of money, which he ultimately failed to account for. At the end of this term, he was re-elected, and he gave another bond with other sureties, and it was held, that the sureties to the first bond were discharged, and the sureties to the last alone liable, although the sum in his hands was unascertained at the time he gave the second bond. In Cooper vs. Joiner, 2d Bailey, 199, the surety to a bond given by the commissioner of a lunatic, under the order of the Court, was held liable for a debt due by the commissioner to the lunatic. So in McDowall vs. Caldwell, 2 M’Cord’s’ Ch. 55, the sureties to a guardianship bond were held liable for a debt, due by the guardian to his ward. So in Jenkins vs. Cobb, 2 Bailey, 60, where the administrator. of an estate had been appointed guardian of minors, interested in it, and it was held, that his administration bond was superseded by his guardianship bond ; and that the sureties to the first were not liable on their bond, for funds which he had in his hands, at the time he was appointed guardian.
Now if, as I suppose, the intention is to govern, in the case under consideration, John S. Field, never was liable on his bond, nor as the substitute for Stoney; first, because the bond was not given in the time limited by the order; secondly, because it is for the faithful discharge of Henry Field’s duty, as guardian alone, and the order of the Court required it to be given for Henry Field and wife. He is not liable on if, as a voluntary bond; because as the witness, Mr. Grayson proves, ‘ ‘the administrator of John S. Field, *394 was to be put in the place of George Stoney, or to become his substitute,” Stoney’s liability was fixed at the time limited, for giving the new bond and new surety, and nothing could discharge him, except what might have been done under the sanction and order of the Court.
Johnston, Chancellor.
The leading questions in this appeal relate to the liabilities of the sureties, to the two guardianship bonds. The first of these, to which Dr. Stoney and Mr. Lawrence were sureties, was entered into in June, 1827. The second, to which Mr. John S. Field was the only surety, was given the 25th of March, 1833.
The circumstances which led to the execution of the latter are stated in the decree. It appears-that Dr. Stoney, one of the sureties to the first bond, had applied to the Court, at the January Term, preceding its execution, by petition setting forth, that he was apprehensive of sustaining loss by reason of his suretyship, and praying to be secured by the Court against future liability; — that is, as I construe it, not to be exonerated from responsibilities already incurred, but to be placed in a condition to incur no more. Upon this petition the order, mentioned in the decree, was made.
' The question is.not so much what the Courtcould have done for the relief of Dr. Stoney, as what is the effect of what it, in fact, did.
The powers of the Court, acting for the best interests of persons under its care, and who are not sxd juris, are very large; though it is not to be taken for granted, that it can go so far as the English Chancery has gone, in some of the precedents quoted in argument. 1 Jac. and W. 627: 1 Molloy 141, 256.
There is no doubt of the power of the Court, to authorize the exchange of one security, in the hands of a trustee, for another ; or to dispose of one species of trust property, and substitute another; a power well exercised, where it is manifestly for the advantage of the cestui que trus t; but to be ventured upon with much caution in all cases, and never without the the clearest evidence of the benefit to be attained. But the application of Dr. Stoney was not of this de *395 scription, nor was his application to have his bond delivered up and cancelled, upon the execution of another. I am under the impression that the Court, on the same principle upon which it would authorize a guardian to exchange one security for another, might be justified in delivering up to the guardian, the security which the Court itself had taken from him, upon condition of being furnished with abetter. Bat, as I have said, such was not the application of Dr. Stoney.
Nor did he apply to be released from the obligation of his bond, and if he had, the prayer of his petition could not have been entertained. It is as incompetent for a judicial tribunal, as for alegislative assembly, to impair the obligation of contracts.
His application was to be relieved from future liability; and the only way, in which the Court could grant him that relief, was by ousting the guardian, and thus removing the occasion of the surety’s incurring any further liability. If it had permitted the guardian to retain his office, it was wholly incompetent to annul the bond given for the faith-fal discharge of his duties, or to declare that the obligors should not be liable, according to the tenor of their contract. We hear, sometimes, of discharges from future liability; and it has been supposed, that although the Court cannot destroy the security, as to liabilities already incurred, it may do so as to those to be incurred. But there is no difference. The obligation is a contract for the future, as well as for the past; and, being a contract, is entirely out of the power of the Court.
From a liability already incurred, no party can be discharged, but by operation of law; and, as to the future, a liability, on the part of those who have contracted for the good conduct of an officer, can only be prevented . by putting it out of his power to misbehave in office. The Court provides relief in such cases by an administrative act, and not by a mere declaration; and such was the opinion of the Legislature, when it provided for the relief of sureties to administration bonds. It did not direct the Ordinary to declare the surety released, but “to make such order or decree, as shall be sufficient to give relief to the petitioner,” Pub. L. 491; and whether the surety is, or is not dis *396 charged, must, in every case, depend entirely on the operation of the remedy.
In this case, the remedy provided for Doctor Stoney consisted in a decree, that unless Doctor Field, the guardian, should give new surety, by the 1st of March, 1833, he should cease to be guardian. This stripped him of all power to add to the existing liability of his sureties ; and, as a mode of relief, conformed exactly to the petition of Doctor Stoney; and as the undertaking of his co-surety, Mr. Lawrence, was by the same instrument, he was placed precisely in the same condition. I shall, therefore, henceforth use the name of Doctor Stoney alone, as signifying both himself and Mr. Lawrence.
In this state of the case, Doctor Stoney stood bound for all the funds in the hands of his principal, at the time he was deprived of his office; but could not be rendered liable for any funds, the principal might afterwards receive ; and if nothing further had been done, he must have remained liable until he was released by Mr. Pelot. This was the effect of the- decree pronounced on his petition, and was precisely what he had asked the Court to do for him.
It must be borne in mind, that the offer to give new security was not made upon the demand of Doctor Stoney, but was a voluntary offer on the part of Doctor Field, for the purpose of procuring a continuance of his office.
I shall shew, hereafter, that Doctor Stoney was entirely delivered from all responsibility, by what afterwards took place.
At present, as the subject is very important, I shall make one or two suggestions, which may be applicable in other cases, and might possibly have been applicable here, but for the revocation of Doctor Field’s letters of guardianship. In some instances, where there is no revocation of office, additional bonds are given by the trustee, with new sureties, without expressly releasing the old, and without any express declaration in the instrument, as to the relation thereby intended to be established between the new and the old sureties, or between both and the equitable obligees. The case of Craythorn vs. Swinburne, 11 Ves. 160, referred to in the decree, is Sufficient authority, if any was necessary, that in such cases, parol evidence *397 of the circumstances may he admitted to explain the intention of the parties; which intention must always govern. If a cestui que trust, or the court in his behalf, intending merely to increase the amount of the security, should require an additional bond; it may be, that the bond should be regarded as accumulative, and the sureties entitled to mutual contribution, as in Dearing vs. Winchelsea, 2 Bos. &. Pul. 270, 1 Con. 318. If the application for a new bond should come from the same quarter, founded on a doubt of the solvency of the obligors to the old, it might be held that the obligees are entitled to rely on either instrument, but not on both, and that, as between the sureties to the two, the primary liability is upon the first. But suppose an application to be made by a surety, requesting that new security be given, the cestui que trust having expressed no dissatisfaction with the existing security, it might possibly be made a question, in such a case, whether the old surety was not discharged; but, waiving that, might it not be maintained, with more reason, that the bonds are not accumulative ; and that, as between themselves, the new surety had assumed the primary responsibility, in exoneration of the old?
Independently of the order of revocation, and assuming, for the present, that the second bond was well executed, the case before us would be identical with the one I have just supposed ; and my opinion would be, that both bonds were open to the cestui que trust, with a right to take satisfaction out of but one of them ; and that Mr. Field, the new surety, should be held to have undertaken to indemnify Dr. Stoney to the extent of the second bond.
But I cannot draw these conclusions in the face of the order of revocation procured by Dr. Stoney, and on which he and his co-surety have a right to insist; nor am I authorized to make these inferences, when I look at the proceedings which led to that order. Dr. Stoney did not ask to be discharged from liabilities already incurred. Neither did the Court, nor could it, release him from them. He asked protection for the future ; and the Court granted his request, by revoking the appointment of Dr. Field. If the new bond had been given before that order, and according to its terms, took effect, there might have, been a continuing *398 guardianship, and then the law of the case might have been as I have heretofore stated. But when the day for giving the new bond had passed, and it was not given, the right and liabilities of Dr. Stoney were fixed ; and as he could have pleaded the order against any future act of his principal, so, on the other hand, he was bound for all his past conduct, and never could have been discharged from his responsibility but for what was done afterwards.
But then Mr. Field joined Dr. Field in a new bond, which, I think, with the Chancellor, effectually bound them, although it was given after the appointed time; and this, I conceive, discharged Dr. Stoney by operation of law.
It is proper to say here, that I do not think this Court should regard Mr. Field’s bond as a voluntary instrument, intended to cover past transactions only, and thereby merely to take up the responsibilities with which Dr. Stoney stood charged. The evidence shows that it was intended as a guardianship bond in the ordinary sense, to operate as a security for whatever could be charged on Dr. Field, as guardian, from the date of its execution.
But then, it is said, Mr. Field was never bound by this bond. I cannot perceive the validity of the objection. It is said that it was delivered with a view that it should operate only in case' Dr. Field should be clothed with the authority of a guardian, and that, by the order of revocation, he was deprived of that authority. Of the delivery of the instrument, there is no doubt; and I think the evidence establishes that it was not delivered as an escrow, dependent upon a future grant of letters to Dr. Field, but with an intention that it should operate, if by law it could operate, and that it was accepted for what it was worth.
Then, was Dr. Field guardian at and after the delivery of the bond ¶
Dr. Stoney has a right to insist that he ceased to be a guardian on the 1st of March, because he is entitled to the benefit of the order granted for his relief. But, although the guardian went out of office on that day, are not all other parties to this suit estopped from denying that he was subsequently clothed with the same authority 1 He was guardian defacto; acted as guardian. Both he and Mr. *399 Field recited in their bond, that he was guardian. Mr. Field, in answer to the former bill, admitted the bond, and his liability under it. The cestui que trust affirmed the continuing capacity of the guardian, and held him to a corresponding accountability. Thus we have the concurrence of all parties interested, on both sides, assenting to the guardianship of Dr. Field. And can there be any need of authority to prove that Mr. Field is completely es-topped from denying it? Whatever Dr. Stoney maybe allowed to say, Mr. Field’s representative is bound to admit, if such an admission were necessary to the case, that the guardianship was never interrupted, or what is more to the point, and what the Court would be bound, under the circumstances, to presume, that new commission issued.
I have said, that upon the execution of the new bond, Dr. Stoney was discharged. Such is the doctrine of Vaughan vs. Evans, 1 Hill. Ch. 414, a case and a doctrine not now intended to be over-ruled by a majority of the Court, although, for different reasons, they concur in the result of the opinion first delivered. My brother Dunkin is of opinion that Dr. Stoney was discharged by the new bond, but then he conceives that the new surety was entitled to the benefit of the counter-securities held by him ; and, by the way, I should be of the same opinion, if this right, which is a mere equity here, and not a legal right, as in the case of Evans’ sureties, and as it would have been in the hands of Dr. Stoney, could be enforced, without disappointing the common creditor, who has a superi- or equity. My brother Johnson is only prevented from applying the doctrine of Vaughan vs. Evans to this case, because he is of opinion that Mr. Field was never effectually bound, (a point to which I have already spoken.) Vaughan vs. Evans is, therefore, still authority.
In that case, it was decided that a surety is discharged, if no act of mal-administration was committed during his time, provided he can show that at the expiration of that time the trust fund passed into hands lawfully entitled to the possession of it.
That was a case in which an officer in possession of assets, with one set of sureties, was reappointed, and gave other sureties. The Court held his first sureties dischar *400 ged. and the second liable for the fund in every instance, when there was no default during the first term of office.
In the case before us, it is not pretended that there was any default during Dr. Stoney’s suretyship. The money was in the pocket of the guardian. There was no order to pay it out. It could not be paid to the ward, on account of her minority. It was not demanded. The possession was lawful. The money was where it should have been, when the new bond was given. After that bond was executed, Dr. Field still retained the possession, and for aught that any party to this suit can be permitted to aver, he had an official right to the possession.
On principle, how can this case be distinguished from Vaughan vs. Evans? The obligation of the first sureties was, that their principal should pay the money according to law ; and they have shewn that he paid it to himself, who was entitled to receive it. If it be said, that in order to discharge Dr. Stoney, there must be a breach in the continuity of office, Stoney can insist that the condition was fulfilled in this case.
It has been said, there can be no such discharge, unless, upon the revocation, there has been an accounting, and then a new return made, charging the trustee as of the new term. This very objection was over-ruled in Vaughan vs. Evans; and what possible difference can such a proceeding make'? The accounting does not make the first surety accountable. It is only evidence of the extent to which he was before chargeable. Nor does the return constitute the liability of the second surety. It is mere evidence of the extent of his liability. And if the trustee should refuse to make such return, whose principal is he, in regard to the default % Is the first surety liable for that'? Plainly, the liability is transferred from the one surety to the other, by operation of law, and by that alone. To the same effect is the case of Schnell vs. Schroder, 1 Bail. Eq. 334; and the reasoning in all the earlier cases in this State, is in the same direction.
No case can be found (I speak with confidence,) in which, after new security given, the preceding sureties have been charged, unless some breach of duty 'was com- *401 mittecl by the principal during their time, and then their liability has always been restricted to that.
The cases which have been supposed to establish a contrary doctrine, do not establish it. The decision — I do not speak of the dicta, are in exact conformity with the view there represented.
In the Ordinary vs. Hudson, 2 Hill. R. 512, the first sureties were held to be discharged; which may be as well supported, on the ground that the second became exclusively liable, as upon the reasoning, that the release of the latter was a release of the former.
In the Ordinary vs. Trail, 2 Bailey R. 480, an opportunity was presented for a decision contrary to my view; but the decision was in conformity to it. An administrator had purchased property at his own sale, upon a credit which had not expired, when new sureties were substituted for those originally taken by the Ordinary. It was held, that the second sureties were exclusively liable. Why! Certainly not because the administrator did not become chargeable for the amount of his purchase, until the credit expired ; for it will not be doubted, that if the administration had been transferred to a third person, the day after the purchase, the successor could have maintained a suit, both against the predecessor and his sureties, for the obligation, which, according to the terms of sale, he, as a purchaser, was bound to give. The decision can be sustained only upon the ground that there was no default committed before the substitution of sureties, and that the fund descended lawfully in the hands of the trustee, after the new sureties had undertaken for him. There is, therefore, no repugnance between this case and Vaughan vs. Evans; and I am of opinion, upon the authority of all the cases, that Dr. Stoney was discharged, from the date of the new bond; and that the liability rested thenceforth, exclusively, upon Mr. Field.
It follows, that the release, given by the cestui que trust to Dr. Stoney, was a mere nullity, and did not discharge Mr. Field.
It is said, however, that Stoney admitted his liability, notwithstanding the discharge. Where is the evidence of this! He had taken a counter-security, while he was lia *402 ble; and when he was threatened with suit, he gave a quit claim of it to the cestui que trust. Was this an admission ? And if it was, was his admission of a liability, when there was none, to rescue Mr. Field from an actual liability'?
This brings me to enquire, whether Mr. Field’s representative is entitled to a credit on his bond, for the value of the property assigned by Stoney and Lawrence, to Mr. Pelot. Upon what ground is the credit to be allowed'?
If the property was the property of Stoney and Lawrence, what right has Mr. Field’s estate tobe credited with the value of it? If it was Dr. Field’s property, it should be applied to the general accountability of the Doctor; and if, by such application, that accountability should be reduced within the limits of Mr. Field’s bond then, and only then, should the bond be credited to the extent of that diminution.
That Dr. Field had no longer any interest,legal or equitable, in the property in question, when the assignment was executed, he being then dead; that the title was then exclusively in Stoney and Lawrence, unaffected by the supposed mortgage; and that Mr. Field never had any interest in the property, I shall proceed to shew, in what I have to say upon the two last grounds of appeal, taken by Mrs. Field.
These grounds are misconceived. The instrument which the parties have called a mortgage, is not a mortgage, within the meaning of the Act.
It is a deed, whereby Dr. Field and wife conveyed the property mentioned in it to Stoney and Lawrence, in trust for the grantors and survivors of them, with a limitation to their issue; but then it is declared by the instrument, that as the trustees had become sureties for the guardianship, so often mentioned, the property should stand pledged for their indemnity.
They had sustained no damage, and there is no need for the pledge; nor, if Dr. Field were now alive, could they claim any thing from him in virtue of it.
But where is the title to the property? A little consideration will shew, that it passed to the trustees, both as to the land and negroes, upon the execution of the instru- *403 meat. The case stands as if the grantors had executed a mortgage, and, cotemporaneously, had assigned the equity of redemption in trust. The title, both legal and equitable, passed from the grantors. The former vested in the trustee; the latter in the new cestui que trust created by the deed. It is the case of a trust estate, subject to a pri- or incumbrance. The equity to redeem it from the incum-brance is, substantially, in the cestui que trust named in the deed, and, in such case, from the nature of the circumstances, must be a mere equity. Yiew the matter as we may, there was no legal interest left in Dr. Field, which could be sold and conveyed by the sheriff to John S. Field; and he took nothing by his purchase, either as to the land or the negroes.
Neither can he complain of the conveyance to the trustees, as a fraud upon him. In the forthcoming bond, he recited it, undertook to deliver the negroes in conformity to it, and must be bound by it. This bond bears date before he became surety for his relative, by virtue of which alone can he be regarded as his creditor. So that he entered into the suretyship with a full knowledge of the pri- or conveyance.
If I am right in this view, the decree requiring him to account for the price at which he assumed to sell the land of the trustees to Norton, might have been proper, provided Norton had been brought in, and the sale confirmed.
I am of opinion, however, that no definitive decree should have been pronounced upon this subject, until Norton was brought in, and the Court enabled to do complete justice to all concerned.
There appears tobe no ground to question the correctness of that part of the decree which directs the delivery of the slaves in possession of Mr. Field’s representative, in conformity to his undertaking, and declares the penalty of the forthcoming bond liable to make good the deficiency. It is a case in which a specific delivery should be decreed on the foot of the bond, construed as a covenant, as was determined in Gordon <& Sims, (a doctrine peculiar to our own Courts,) and it is manifestly proper that, where the covenanter has put it out of his power to perform a part of the covenant, he should account for the value of that *404 part of the property, restricting his liability within the penalty of his bond. If the case had been of a bond, conditioned to make titles to land, and the obligor could not effectually make titles to a part, a doubt upon the subject would hardly have arisen.
According to the view I have taken, the assignment by the trustees carried the legal title to the assignees, and enables them to recover the subject matter.
But, as upon the death of Dr. Field and his wife, the interests of their issue accrued, it may be said that the assignment was a breach of trust. This may be true; and the children of Dr. Field may call both the trustees and their assignees to account for it, but no party to this suit can interpose in their behalf.
It will be perceived, that I am of opinion that Mr. Field should have been held liable, as surety, to the full extent of his bond. The decree of the Chancellor stops short of this. It directs that the bond of Dr. Stoney should be deducted from the original liability of the guardian, and that Mr. Field should be held liable for the balance, keeping within the penalty of his bond. It may be, therefore, that the balance against him may fall short of the amount of his bond. But, as the opposite party has not appealed from this part of the decree, I would not disturb it. I am for affirming the decree, subject to the modifications I have indicated.
DeTreville, Solicitor for the Ex’rx. of John S. Field. E. & A. Rhett, Solicitors for Pelot and wife,, et al.